IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

HARRY W. ANDERSON,      :
         :
         Petitioner,      :
         :
         v.      :      Civil Action No. 16-174-CFC
         :
DANA METZGER, Warden, and      :
ATTORNEY GENERAL OF THE      :
STATE OF DELAWARE,      :
         :
         Respondents.[1]      :

---

Harry W. Anderson. *Pro se* Petitioner.

Gregory Smith, Deputy Attorney General of the Delaware Department of Justice, Wilmington, Delaware. Attorney for Respondents.

---

**MEMORANDUM OPINION**[2]

December _14_, 2018
Wilmington, Delaware

---

[1] Warden Dana Metzger replaced former warden David Pierce, an original party to the case. *See* Fed. R. Civ. P. 25(d).

[2] This case was originally assigned to the Honorable Gregory M. Sleet, and was re-assigned to the undersigned's docket on September 20, 2018.

CONNOLLY, UNITED STATES DISTRICT JUDGE:

Pending before the Court is Petitioner Harry W. Anderson's Petition for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 and his Amended Petition (hereinafter referred to as "Petition"). (D.I. 3; D.I. 18) The State filed an Answer in opposition. (D.I. 23) For the reasons discussed, the Court will deny the Petition.

## I. FACTUAL BACKGROUND

In September 2012, Petitioner was indicted on three counts of felony theft, three counts of third degree burglary, and three counts of criminal mischief. (D.I. 23 at 2) On January 24, 2013, Petitioner pled guilty to two counts of burglary, in exchange for which the State dismissed the balance of the indictment, agreed to move to sentence Petitioner as a habitual offender on only one count, and agreed to recommend no more than six years at Level V on that count. *See Anderson v. State*, 99 A.3d 226 (Table), 2014 WL 3511717, at *3 (Del. July 14, 2014). On September 20, 2013, the day of Petitioner's scheduled sentencing, Petitioner orally moved to withdraw his guilty plea. *Id.* at *1. The Superior Court denied the motion, and sentenced Petitioner as a habitual offender for the first count of burglary to 6 years at Level V incarceration. *See Anderson v. State*, 130 A.2d 340 (Table), 2015 WL 9283845, at *1 (Del. Dec. 18, 2015). On the second burglary count, the Superior Court sentenced Petitioner to three years at Level V incarceration, suspended for 18 months at Level III probation. *Id.* The Delaware Supreme Court affirmed Petitioner's convictions and sentences on July 14, 2014. *See Anderson*, 2014 WL 3511717, at *4.

Thereafter, Petitioner filed a motion for sentence reduction in December 2013 and a motion to correct an illegal sentence in August 2014. (D.I. 23 at 2) The Superior

Court denied both motions on September 8, 2014, and Petitioner did not appeal that decision. *See Anderson v. State*, 2015 WL 1396360, at \*1 (Del. Mar. 24, 2015). Petitioner filed a second motion to correct an illegal sentence on August 19, 2014, which the Superior Court denied on September 8, 2014. (D.I. 23 at 2-3) On September 22, 2014, Petitioner filed a document titled "motion for extraordinary circumstances," seeking correction of his sentence under Rule 35. *See Anderson*, 2015 WL 1396360, at \*1. The Superior Court denied the motion on December 23, 2014, and the Delaware Supreme Court affirmed that decision in March 2015. *Id.* at \*2. Petitioner filed a motion for post-conviction relief pursuant to Delaware Superior Court Criminal Rule 61 ("Rule 61 motion") on October 10, 2014, which the Superior Court on January 6, 2015. *See State v. Anderson*, 2015 WL 121879, at \*1, 4 (Del. Super. Ct. Jan. 6, 2015). Petitioner did not appeal that decision. Instead, on June 18, 2015, Petitioner filed in the Superior Court a "motion for relief from judgment," seeking relief from the Superior Court's January 6, 2015 denial of his Rule 61 motion, which the Superior Court denied on June 24, 2015. *See State v. Anderson*, 2015 WL 3882750, at \*2 (Del. Super. Ct. June 24, 2015). Finally, on July 17, 2015, Petitioner filed a motion for correction of illegal sentence. (D.I. 23 at 3) The Superior Court denied the motion on August 4, 2015, and the Delaware Supreme Court affirmed that decision on December 18, 2015. *See Anderson*, 2015 WL 9283845, at \*2.

## II.    GOVERNING LEGAL PRINCIPLES

### A. The Antiterrorism and Effective Death Penalty Act of 1996

Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") "to reduce delays in the execution of state and federal criminal sentences . .

. and to further the principles of comity, finality, and federalism." *Woodford v. Garceau*, 538 U.S. 202, 206 (2003). Pursuant to AEDPA, a federal court may consider a habeas petition filed by a state prisoner only "on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). AEDPA imposes procedural requirements and standards for analyzing the merits of a habeas petition in order to "prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002).

## B. Exhaustion and Procedural Default

Absent exceptional circumstances, a federal court cannot grant habeas relief unless the petitioner has exhausted all means of available relief under state law. *See* 28 U.S.C. § 2254(b); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842-44 (1999); *Picard v. Connor*, 404 U.S. 270, 275 (1971). AEDPA states, in pertinent part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that –
>
> (A) the applicant has exhausted the remedies available in the courts of the State; or
>
> (B)(i) there is an absence of available State corrective process; or
> (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

28 U.S.C. § 2254(b)(1).

The exhaustion requirement is based on principles of comity, requiring a petitioner to give "state courts one full opportunity to resolve any constitutional issues by

3

invoking one complete round of the State's established appellate review process."

*O'Sullivan*, 526 U.S. at 844-45; *Werts v. Vaughn*, 228 F.3d 178, 192 (3d Cir. 2000). A petitioner satisfies the exhaustion requirement by demonstrating that the habeas claims were "fairly presented" to the state's highest court, either on direct appeal or in a post-conviction proceeding, in a procedural manner permitting the court to consider the claims on their merits. *See Bell v. Cone*, 543 U.S. 447, 451 n.3 (2005); *Castille v. Peoples,* 489 U.S. 346, 351 (1989).

A petitioner's failure to exhaust state remedies will be excused if state procedural rules preclude him from seeking further relief in state courts. *See Lines v. Larkins,* 208 F.3d 153, 160 (3d Cir. 2000); *see Teague v. Lane,* 489 U.S. 288, 297-98 (1989). Although treated as technically exhausted, such claims are nonetheless procedurally defaulted. *See Lines,* 208 F.3d at 160; *Coleman v. Thompson*, 501 U.S. 722, 750-51 (1991). Similarly, if a petitioner presents a habeas claim to the state's highest court, but that court "clearly and expressly" refuses to review the merits of the claim due to an independent and adequate state procedural rule, the claim is exhausted but procedurally defaulted. *See Coleman*, 501 U.S. at 750; *Harris v. Reed*, 489 U.S. 255, 260-64 (1989). Federal courts may not consider the merits of procedurally defaulted claims unless the petitioner demonstrates either cause for the procedural default and actual prejudice resulting therefrom, or that a fundamental miscarriage of justice will result if the court does not review the claims. *See McCandless v. Vaughn,* 172 F.3d 255, 260 (3d Cir. 1999); *Coleman,* 501 U.S. at 750-51. To demonstrate cause for a procedural default, a petitioner must show that "some objective factor external to the

4

defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986). To demonstrate actual prejudice, a petitioner must show that the errors during his trial created more than a possibility of prejudice; he must show that the errors worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Id.* at 494.

Alternatively, if a petitioner demonstrates that a "constitutional violation has probably resulted in the conviction of one who is actually innocent,"[3] then a federal court can excuse the procedural default and review the claim in order to prevent a fundamental miscarriage of justice. *See Edwards v. Carpenter*, 529 U.S. 446, 451 (2000); *Wenger v. Frank*, 266 F.3d 218, 224 (3d Cir. 2001). The miscarriage of justice exception applies only in extraordinary cases, and actual innocence means factual innocence, not legal insufficiency. *See Bousley v. United States*, 523 U.S. 614, 623 (1998); *Murray*, 477 U.S. at 496. A petitioner establishes actual innocence by asserting "new reliable evidence - -whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence - - that was not presented at trial," showing that no reasonable juror would have voted to find the petitioner guilty beyond a reasonable doubt. *Hubbard v. Pinchak*, 378 F.3d 333, 339-40 (3d Cir. 2004).

### B. Standard of Review

If a state's highest court adjudicated a federal habeas claim on the merits, the federal court must review the claim under the deferential standard contained in 28 U.S.C. § 2254(d). Pursuant to 28 U.S.C. § 2254(d), federal habeas relief may only be granted if the state court's decision was "contrary to, or involved an unreasonable

---

[3]*Murray*, 477 U.S. at 496.

application of, clearly established federal law, as determined by the Supreme Court of the United States," or the state court's decision was an unreasonable determination of the facts based on the evidence adduced in the trial. 28 U.S.C. § 2254(d)(1) & (2); *see also Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Appel v. Horn*, 250 F.3d 203, 210 (3d Cir. 2001). A claim has been "adjudicated on the merits" for the purposes of 28 U.S.C. § 2254(d) if the state court decision finally resolves the claim on the basis of its substance, rather than on a procedural or some other ground. *See Thomas v. Horn*, 570 F.3d 105, 115 (3d Cir. 2009). The deferential standard of § 2254(d) applies even "when a state court's order is unaccompanied by an opinion explaining the reasons relief has been denied." *Harrington v. Richter*, 562 U.S. 86, 98 (2011). As explained by the Supreme Court, "it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Id.* at 99.

Finally, when reviewing a habeas claim, a federal court must presume that the state court's determinations of factual issues are correct. *See* 28 U.S.C. § 2254(e)(1). This presumption of correctness applies to both explicit and implicit findings of fact, and is only rebutted by clear and convincing evidence to the contrary. *See* 28 U.S.C. § 2254(e)(1); *Campbell v. Vaughn*, 209 F.3d 280, 286 (3d Cir. 2000); *Miller-El v. Cockrell*, 537 U.S. 322, 341 (2003) (stating that the clear and convincing standard in § 2254(e)(1) applies to factual issues, whereas the unreasonable application standard of § 2254(d)(2) applies to factual decisions).

6

## III. DISCUSSION

Petitioner's timely-filed Petition asserts the following seven grounds for relief: (1) defense counsel provided ineffective assistance by: (a) failing to test the State's case; (b) making out-of-court deals with the State; (c) permitting Petitioner to enter into a tainted plea agreement; (d) coercing Petitioner to plead guilty; (e) representing Petitioner despite a conflict of interest; and (f) refusing to file motions; (2) the Superior Court violated Delaware Superior Court Criminal Rule 48(b) by not dismissing the charges against Petitioner for failure to prosecute; (3) the tainted plea agreement violated the Fifth Amendment of the United States Constitution and Article I of the Delaware Constitution; (4) Delaware's habitual offender statute violates the Fourteenth Amendment;(5) the Superior Court erred in denying Petitioner's motion to withdraw the plea agreement; (6) defense counsel represented Petitioner while operating under a conflict of interest that was created when defense counsel made an out-of-court agreement with the State and when counsel failed to file a motion to suppress evidence; and (7) Petitioner's plea should be vacated because he entered the plea agreement under coercion and duress.

### A. Claims One and Six: Ineffective Assistance of Counsel

To the extent Petitioner presented Claims One and Six to the Delaware Supreme Court during his direct appeal, that presentation did not exhaust state remedies.[4] In

_____

[4]In his Reply, Petitioner contends that he exhausted state remedies because he presented the ineffective assistance of counsel claim and the conflict of interest claim to the Delaware Supreme Court on direct appeal. (D.I. 34 at 1) However, Petitioner's Opening Brief on direct appeal expressly stated that the was not raising ineffective assistance as part of his appeal, because ineffective assistance of counsel claims in Delaware must be raised in a Rule 61 motion. (D.I. 26-4 at 22-24) According to

7

Delaware, an ineffective assistance claim cannot be asserted on direct appeal; rather, it must first be raised in a Rule 61 motion to the Superior Court. *See Gibbs v. Carroll*, 2006 WL 956655, at *2 (D. Del. Apr. 12, 2006). Moreover, even though Petitioner presented the two Claims in a Rule 61 motion, he did not present them to the Delaware Supreme Court because he did not appeal the denial of his Rule 61 motion. Consequently, Petitioner did not exhaust state remedies for Claims One and Six.

At this juncture, any attempt by Petitioner to raise Claims One and Six in a new Rule 61 motion would be barred as untimely under Delaware Superior Court Criminal Rule 61(i)(1). *See* Del. Super. Ct. Crim. R. 61(i)(1). As a result, the Court must treat Claims One and Six as technically exhausted but procedurally defaulted, which means that the Court cannot review the merits of the Claims absent a showing of cause and prejudice, or that a miscarriage of justice will result absent such review.

Petitioner does not assert, and the Court cannot discern, any cause for his procedural default. To the extent Petitioner believes he satisfied the exhaustion requirement by presenting Claims One and Six to the Delaware Supreme Court on direct appeal should be construed as an attempt to establish cause, he is mistaken. It is well-settled that a petitioner's lack of legal knowledge fails to constitute cause. *See White v. Carroll*, 416 F. Supp. 2d 279, 282 (D. Del. 2006).

Given Petitioner's failure to establish cause, the Court will not address the issue of prejudice. The miscarriage of justice exception to the procedural default doctrine also does not excuse Petitioner's default, because he has not alleged any facts or provided

---

Petitioner's Opening Brief, he was challenging the voluntariness of his guilty plea and the Superior Court's denial of his motion to withdraw that plea. (D.I. 26-4 at 22-24)

new reliable evidence to establish his actual innocence. Accordingly, the Court will deny Claims One and Six as procedurally barred from habeas review.

### B. Claim Two: Violation of Delaware Superior Court Criminal Rule 48(b)

In Claim Two, Petitioner contends that the Superior Court should have dismissed the charges against him for failure to prosecute under Rule 48(b) because the grand jury did not indict him within 45 days of his arrest. It is well-settled that "[s]tate courts are the ultimate expositors of state law,"[5] and claims based on errors of state law are not cognizable on habeas review. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). Therefore, the Court will deny Claim Two for failing to assert a proper basis for federal habeas relief.

### C. Claims Three, Five, and Seven: Illegal Guilty Plea

Claims Three, Five, and Seven assert variations of the same argument, namely, that Petitioner's guilty plea was rendered involuntary as a result of defense counsel's ineffective assistance and certain pre-plea actions taken by the State or the Superior Court. Specifically, Claim Three asserts that the guilty plea violates the Fifth Amendment of the Constitution and Article I of the Delaware Constitution because the Superior Court improperly permitted the indictment and/or plea agreement to be amended to include restitution regarding a burglary offense committed in 2011 in a Macy's department store for which Petitioner was never indicted.[6] Claim Five asserts

---

[5]*Mullaney v. Wilbur*, 421 U.S. 684, 691 (1975).

[6]On August 6, 2013, Petitioner was arrested on charges of third degree burglary, possession of a burglary tool, misdemeanor theft, and criminal mischief for offenses in committed in a Macy's department store in 2011. *See Anderson*, 2014 WL 3511717, at *1; (D.I. 26-7 at 16). The case was dismissed on September 23, 2013. *Id.*

that the Superior Court abused its discretion and violated Delaware Superior Court Criminal Rule 32(d) by denying Petitioner's motion to withdraw his guilty plea, once again arguing that his guilty plea was involuntary because the State added restitution for an "unindicted charge" to the plea agreement. Claim Seven asserts that Petitioner entered into the plea agreement under "coercion, compulsion and duress" due to defense counsel's failure to file a motion to suppress evidence and the Superior Court's denial of his *pro se* pre-trial motions.

To the extent Petitioner contends that his guilty plea violates Article I of the Delaware Constitution and that the Superior Court violated Rule 32(d) when it denied his motion to withdraw his plea, Petitioner has asserted state law issues that are not cognizable on federal habeas review. *See Estelle*, 502 U.S. at 67-68. Consequently, the Court will deny these arguments for failing to assert a proper basis for relief.

Petitioner also contends his guilty plea was involuntary because the indictment was untimely, the plea agreement included restitution for an unindicted charge, and he was compelled/coerced to plead guilty as a result of defense counsel's failure to file a motion to suppress evidence and the Superior Court's denial of his *pro se* motions. These allegations are cognizable on habeas review. Given the Delaware Supreme Court's denial of the arguments as meritless, Petitioner will only be entitled to habeas relief if the Delaware Supreme Court's denial of the arguments were either contrary to, or based on an unreasonable application of, clearly established federal law under § 2254(d)(1).

The voluntariness of a plea "can be determined only by considering all of the relevant circumstances surrounding it." *Brady v. United States*, 397 U.S. 742, 749 (1970). When assessing the voluntary nature of a plea, the representations made by a defendant under oath during a guilty plea colloquy "constitute a formidable barrier in any subsequent collateral proceedings" and "carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977). As explained by the Third Circuit, "[t]he ritual of the [plea] colloquy is but a means toward determining whether the plea was voluntary and knowing. A transcript showing full compliance with the customary inquiries and admonitions furnishes strong, although not necessarily conclusive, evidence that the accused entered his plea without coercion and with an appreciation of its consequences." *United States v. Stewart*, 977 F.2d 81, 84 (3d Cir. 1992).

In turn, as articulated by the Supreme Court in *Tollett v. Henderson*:

> [A] guilty plea represents a break in the chain of events which has preceded it in the criminal process. When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea. He may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was [constitutionally ineffective].

*Tollett v. Henderson*, 411 U.S. 258, 267 (1973). A voluntary and knowing guilty plea bars a defendant from raising antecedent non-jurisdictional[7] constitutional violations "not

---

[7]As explained by the Court of Appeals for the Tenth Circuit, the term non-jurisdictional is somewhat confusing; rather, "[t]he most accurate statement of the law would be ... [that a] guilty plea waives all defenses except those that go to the court's subject-matter jurisdiction and the narrow class of constitutional claims involving the right not to be haled into court." *United States v. DeVaughn*, 694 F.3d 1141, 1193 (10th Cir. 2012).

logically inconsistent with the valid establishment of factual guilt and which do not stand in the way of conviction if factual guilt is established." *Menna v. New York*, 423 U.S. 61, 62 n. 2 (1975). In cases where the petitioner's conviction rests on a guilty plea, the "focus of federal habeas inquiry is the nature of [defense counsel's] advice and the voluntariness of the plea, not the existence as such of an antecedent constitutional infirmity." *Tollett,* 411 U.S. at 266.

Turning to the first prong of the § 2254(d)(1) inquiry, the Court notes that the Delaware Supreme Court did not reference federal law when denying Petitioner's arguments. Nevertheless, the Delaware Supreme Court's decision was not contrary to clearly established federal law, because the Delaware cases cited therein articulate the applicable precedent.[8] *See Fahy v. Horn,* 516 F.3d 169, 196 (3d Cir.2008) (Pennsylvania Supreme Court's decision was not "contrary to" clearly established federal law because it appropriately relied on its own state court cases, which articulated the proper standard derived from Supreme Court precedent); *Williams,* 529 U.S. at 406 ("[A] run-of-the-mill state-court decision applying the correct legal rule from [Supreme Court] cases to the facts of a prisoner's case [does] not fit comfortably within § 2254(d)(1)'s 'contrary to' clause").

Moreover, having reviewed the record, the Court concludes that the Delaware Supreme Court's denial of Claims Three, Five, and Seven did not involve an

---

[8]The Delaware Supreme Court cited *Scarborough v. State*, 938 A.2d 644, 650 (Del. 2007) and *Powell v. State*, 2010 WL 572129 (Del. Feb. 18, 2010). *Scarborough* cites to *Somerville v. State*, 703 A.2d 629, 632 (Del. 1997) which, in turn, articulates the standard from *Blackledge*. *Powell* cites to *Miller v. State*, 840 A.2d 1229 (Del. 2003) which, in turn, cites to *Downer v. State*, 543 A.2d 309, 311-12 (Del. 1988), and *Downer* thoroughly discusses the standards in *Tollett*, *Brady*, and *Blackledge*.

unreasonable application of clearly established federal law under § 2254(d)(1). For instance, the transcript of Petitioner's plea colloquy contains his clear and explicit statements that he had discussed his case with defense counsel and that he was satisfied with his counsel's representation. (D.I. 26-7 at 22-23) Petitioner also acknowledged that he was on probation when he committed the charged offenses and that pleading guilty to charged offenses established a violation of his probationary sentence. (D.I. 26-7 at 20) Petitioner indicated his understanding that the State was going to have him declared a habitual offender on one burglary charge and ask for a maximum of six years in prison for that conviction, and that he would be obligated to make restitution for an earlier unindicted charge. (D.I. 26-7 at 20-21)

In addition, the plea colloquy transcript indicates that Petitioner understood he could be sentenced anywhere from zero years to life without parole if he was declared a habitual offender, despite the State's recommendation to cap the sentence at six years. (D.I. 26-7 at 20) Petitioner affirmatively responded that he understood the rights he was giving up by pleading guilty, and that he understood the provision regarding restitution involved one unindicted case. (D.I. 26-7 at 20-22) He also affirmatively responded that nobody promised him what his sentence would be or offered him anything in exchange for his plea, and he acknowledged that he committed the charges to which he was pleading guilty. (D.I. 26-7 at 21-22) Finally, the Plea Agreement (D.I. 26-5 at 15) and the Truth-In-Sentencing Guilty Plea Form (D.I. 26-9 at 7) signed by Petitioner demonstrate that he knowingly and voluntarily entered into his plea agreement; he had not been promised anything not contained in the plea agreement; he was not forced or

13

threatened to enter the plea agreement; and he knew he faced a possible maximum sentence of life under the criminal penalty statutes if he was declared a habitual offender.

In turn, since Petitioner moved to withdraw his guilty plea, the Superior Court judge had the additional benefit of hearing Petitioner's reasons for challenging the voluntariness of his guilty plea in more depth, as well as defense counsel's responses. For instance, defense counsel explained that: (1) he drafted and then showed a motion to suppress a ring as evidence with the State, and the State agreed that it would not seek to introduce the ring into evidence; (2) he had advised Petitioner to refrain from waiving a jury trial until a judge had been assigned to hear the case at trial; (3) his reasons for believing a defense of medical incapacity would not have been compelling; and (4) the evidence against Petitioner was overwhelming. (D.I. 26-7 at 26) After listening to Petitioner and defense counsel, the Superior Court found, for the second time, that Petitioner's plea was knowing, voluntary, and intelligent. (D.I. 26-7 at 27)

Based on the foregoing, the Court concludes that Petitioner has failed to provide compelling evidence as to why the statements he made during the plea colloquy should not be presumptively accepted as true. See 28 U.S.C. § 2254(e). As a result, the Delaware Supreme Court's holding that Petitioner was bound by the representations he made during the plea colloquy and on the Truth-In-Sentencing form constituted a reasonable application of clearly established federal law as set forth in Blackledge. In turn, having determined that Petitioner's plea was voluntary, knowing, and intelligent, the Court further holds that the Delaware Supreme Court did not unreasonably apply

*Tollett* and its progeny by finding Petitioner waived his complaints about the timeliness of the indictment and the inclusion of the restitution requirement for the unindicted 2011 burglary charge in the plea agreement. *See Class v. United States*, ___ U.S. ___, 138 S.Ct. 798, 805-06 (2018) (explaining that a "valid guilty plea . . . renders irrelevant . . . the constitutionality of case-related government conduct that takes place before the plea is entered."); *Kotsonis v. United States*, 2017 WL 7310633, at \*3 (6th Cir. Sept. 12, 2017) (explaining that petitioner's pre-plea claim that the prosecutor knew or should have known that his confession and firearms were obtained in violation of his constitutional rights was waived by virtue of his knowing guilty plea); *Trice v. Pierce*, 2016 WL 2771123, at \*5 (D. Del. May 13, 2014).

Accordingly, the Court will deny Claims Three, Five, and Seven for failing to satisfy § 2254(d)(1).

## D. Claim Four: Constitutionality of Delaware's Habitual Offender Statute

In his final Claim, Petitioner argues that Delaware's habitual offender statute, 11 Del. C. § 4214, violates the Due Process and Equal Protection Clauses of the United States Constitution. He contends that the statute is unconstitutionally vague and encourages arbitrary and discriminatory enforcement because it gives the sentencing court full discretion to impose a sentence up to life imprisonment for any felony without prior notice of which felony conviction will subject a defendant to habitual offender status. Petitioner presented this argument to the Delaware Supreme Court when he appealed the Superior Court's denial of his motion to correct an illegal sentence in 2015. *See Anderson*, 2015 WL 9283845, at \*2. The Delaware Supreme Court denied

15

the argument as meritless. Given this adjudication, Petitioner will only be entitled to habeas relief if the Delaware Supreme Court's decision was either contrary to, or an unreasonable application of, clearly established federal law.

A prosecutorial sentencing decision may not be "deliberately based upon an unjustifiable standard such as race, religion, or other arbitrary classification." *Oyler v. Boles*, 368 U.S. 448, 456 (1962). Vindictive prosecutions in response to a defendant's exercise of protected statutory and constitutional rights are also prohibited. *See United States v. Goodwin*, 457 U.S. 368, 372 (1982). However, aside from these restrictions, prosecutorial discretion in sentencing is virtually unlimited under the Constitution. *See Bordenkircher v. Hayes*, 434 U.S. 357, 364 (1978) ("[S]o long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute, and what charge to file or bring before a grand jury, generally rests entirely in his discretion."). The fact that some conscious selectivity exists in the enforcement of a recidivist sentencing statute does not, on its own, constitute a federal constitutional violation. *Oyler*, 368 U.S. at 455-56. Notably, the United States Supreme Court has upheld the constitutionality of habitual offender statutes more severe than Delaware's. *See Ewing v. California*, 538 U.S. 11, 25 (2003); *Rummel v. Estelle*, 445 U.S. 263, 284 (1980). Finally, pursuant to *Oyler*, "a defendant must receive reasonable notice and an opportunity to be heard relative to the recidivist charge even if due process does not require that notice be given prior to trial on the substantive offense." *Oyler*, 368 U.S. at 504.

16

Here, the Delaware Supreme Court cited *Oyler* when denying Claim Four. *See Anderson*, 2015 WL 9283845, at \*2 n.6 & n.9. Thus, the Delaware Supreme Court's decision was not contrary to clearly established federal law.

In addition, the Delaware Supreme Court did not unreasonably apply clearly established federal law in denying Claim Four. Petitioner has not alleged any facts in this proceeding showing he was the victim of selective or retaliatory prosecution. The record also belies his assertion that he was not put on notice that he was eligible for habitual offender sentencing. During his plea colloquy, Petitioner explicitly acknowledged his eligibility to be sentenced as a habitual offender and the fact that, despite pursuing habitual offender status for Petitioner, the State agreed to seek no more than six years of imprisonment. Moreover, during Petitioner's sentencing hearing, defense counsel explained that he and Petitioner "discussed all throughout the pendency of this case the fact that if he were convicted of another felony he would be qualified to be sentenced as a habitual offender." (D.I. 26-7 at 27) Accordingly, the Court concludes that Claim Four does not warrant relief under § 2245(d)(1).

## IV. CERTIFICATE OF APPEALABILITY

The Court must decide whether to issue a certificate of appealabilty. *See* 3d Cir. L.A.R. 22.2 (2011). A certificate of appealability may be issued only when a petitioner makes a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This showing is satisfied when the petitioner demonstrates "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

17

For the reasons stated above, the Court concludes that Petitioner's habeas Petition must be denied. Reasonable jurists would not find this Court's assessment of Petitioner's constitutional claims to be debatable or wrong. Consequently, Petitioner has failed to make a substantial showing of the denial of a constitutional right, and a certificate of appealability will not be issued.

## V.  CONCLUSION

For the foregoing reasons, the Court will deny the instant Petition. An appropriate Order will be entered.